Opinion by
White, P. J.

(Transferred from Austin. J

§ 353. Levy of attachment, etc.; range levy; case stated. Meusing, Stratton & Co. sued one Mays in the county court of Galveston county, and sued out an attachment against the property of Mays to Milam county, which was levied upon sixty-six head of cattle belonging to him, running in the range in Milam county. The officer making the levy did not have or take possession of the cattle at the time of the levy, but made what is termed a “range levy.” Mays replevied the cattle, by giving bond, and the officer released them to him. After the return of the replevy bond to the Galveston county court, the suit was tried and judgment rendered against Mays for the debt sued on, and foreclosing the attachment lien on the cattle. After the rendition of this judgment, but before the cattle were sold under the judgment of foreclosure, appellant Carothers, without notice of the attachment proceedings, purchased twenty-one head of the cattle from Mays. Subsequently to Carothers* purchase the cattle were sold under the judgment of foreclosure, and appellee Wilkerson bought the sixty-six head of them. Wilkerson brought this suit to recover the twenty-one head of the cattle bought by Carothers of Mays. The suit was tried in the county court of Milam county at a term beginning on the first Monday in October, 1883, before the judge without a jury, and judgment was rendered against Carothers for the value of the twenty-one head of cattle, $291, and costs. Held': It is claimed that the levy of the writ of attachment was-upon gentle cattle, and was a “range levy,” not accompanied by seizure and possession, and was therefore illegal and void. A writ of attachment, by law, is required to be levied in the same manner as is, or may be, the *308 writ of" execution upon similar property. [R. S. art. 167.] With regard to executions, it is provided that the officer shall call upon the defendant, or, if absent, upon his agent, to point out property, and if it be personal property, the defendant or his agent shall deliver the same into the officer’s possession. [R. S. art. 2287.] A levy upon personal property is made by taking possession thereof, when the defendant in execution is entitled to possession. [R. S. art. 2292.] An exception to the general rule of actual possession is made in' case the animals are running at large in the range, and cannot be herded and penned without great inconvenience and expense, in which case the levy may be made by designating, by reasonable estimate, the number of animals, and describing them by their marks and brands, or either. Such levy shall be made in the presence of two or more -credible persons, and notice thereof shall be given in writing to the owner or his herder, or agent, if residing within the county and known to the officer. [R. S. art. 2293.]
§ 354. Defeótive levy; cannot be attacked in a collateral proceeding. We may concede that the objection made to the levy might have been legally interposed by Mays in the orginal suit in Galveston county court, and that such levy was invalid. The objection, however, was not made in that suit. It is made for the first time by Carothers in a suit in which the parties are different, and the cause of action different, and is made by Carothers with the sole view and purpose of defeating the title to Wilkerson, acquired at the attachment sale under the supposed illegal levy. Can Wilkerson’s title be attacked in such manner? “ The general principle to be adduced from all the authorities is, that the title of a purchaser, not himself in fault, cannot be impaired in law, nor in equity, by showing any mere error or irregularity in the proceedings. Errors and irregularities must be corrected by a direct proceeding. If not so corrected, they cannot be made available by way of a collateral attack on the purchaser’s title.” [Freeman on Executions, § 339.]
*309 § 355. Replevy bond in attachment; effect of; restores the property absolutely to the defendant. As before stated, after the attachment levy, Mays replevied the property, and sold the portion sued for to Oarothers. In this suit Oarothers claimed that the replevy bond released the property from the attachment lien entirely, and rehabilitated and invested Mays with the right to sell or dispose of it as he pleased, and to the same extent as though it had never been subject to the lien, and that a sale by Mays, under these circumstances,. conveyed a good and valid title as against any one claiming under the attachment. So far as we are advised, this is a question which has never been determined in the courts of last resort of this state, since the adoption of the Revised Statutes. It will be found, upon examination, that our present statute with regard to the nature, character and conditions of a replevy bond in attachment proceedings, is essentially different in its terms from the law as it existed aforetime. Under the former law the condition of such bond was, that “ if the defendant be condemned in the action, he, or some other person for him, shall return the specific property attached, to satisfy the judgment that may be rendered.” [Pas. Dig. art. 150.] This condition made it a “forthcoming bond,” as known and designated in most of the states. W ith regard to such bonds the rule is, that they do not discharge the lien of the attachment, since the very object of the bond is to secure the. safe keeping and return of the property to the officer, if its return should be required. It follows that property thus bonded could not be seized under another attachment or junior execution, either against the attachment debtor, or a third person claiming it adversely to the debtor and the creditor; for to hold otherwise would put it in the power of a stranger to the attachment suit, by a levy and sale, to cause a forfeiture of the condition of the bond. [Drake on Attach. § 303.] In other words, the replevy bond, under the former law, left the attached property in custodia legis, and it could in no manner be interfered *310 with in derogation of the rights of the lien holder, or the court. [W. & W. Con. Rep. §§ 81, 879, 1190, 1196.]
As the law now exists, it requires no such condition in the replevy bond, and according to our construction, it plainly imports that the execution of the bond by the defendant, and its approval by the officer, absolutely releases the property levied upon from the lien, and from the custody of the law, and restores i[ to the defendant, together with the right of perfect control over, and disposition of it, as though it had never been levied upon. As now in force, the statute provides: “When personal property is attached, the same shall remain in the hands of the officer attaching until final judgment, unless a claim be made thereto, or unless the same be replevied, or be sold as provided bylaw.” [R. S. art. 168.] “At any time before judgment, should the property not have been previously claimed or sold, as provided in this cha¡> ter, the defendant may replevy the same, or any part thereof, by giving bond with two or more good and sufficient sureties, to be approved by the officer who levied the writ, payable to the plaintiff, in double the amount of the plaintiff’s debt, or, at the defendant’s option, for the value of the property replevied, to be estimated by the officer, conditioned that should the defendant he condemned in the action, he shall satisfy the judgment which may be rendered therein, or shall pay the estimated value of the property, with lawful interest thereon from the date of the bond" [R. S. art. 170.] “Where personal property which has been levied upon is replevied, the officer making the levy shall deliver the replevy bond to the clerk to be filed with the papers of the cause.” [R. S. art. 177.] The officer is also required to make a report in writing of the disposition made of such property, and such report shall be filed among the papers of the cause. [R. S. art. 178.] Article 179 provides, and we call attention specially thereto, that “the execution of the writ of attachment upon any property of the defendant subject thereto, unless the writ should be quashed or otherwise *311 vacated, shall create a lien from the date of such levy on the estate levied on, and on such personal property as remains in the hands of the attaching officer, and on the proceeds of such personal property as may have been sold.” The lien remains only to the extent of, and only upon, the personal property which remains in the hands of the officer. Property replevied is thereby taken out of the hands of the officer, and the lien no longer subsists. Where the plaintiff recovers, the foreclosure upon, and sale of, personal property, relates to and embraces only the personal property remaining in the hands of the officer. [R. S. art. 180.] We conclude that the foreclosure of the attachment lien in the county court of (Galveston county, and the sale of the cattle under it, w'ere without authority of law, and conveyed no title as against one purchasing the property of the legal owner, who had rightfully regained title and possession of it by replevying it under the law. %
October 15, 1884.
§ 356. Terms of county courts; amendment of constitution as to, became operative, when; judgment rendered at illegal term is void. The amendment to article V of the constitution,, by adding section 29 thereto, fixing the terms of the county courts, and empowering the commissioners’ courts of the several counties to change the terms prescribed or make additional terms, did not become operative until the 23d day of September, 1883, and therefore the commissioners’ court of Milam county had no authority, on the 3d day of September, 1883, to change the term of the county court of said county from the third Monday in September, 1883, to the first Monday in October, 1883, and the term of said court held by virtue of such change was illegal, and the judgment rendered herein at said term is coram non judice and void. [Ante, § 289.]
Reversed and remanded.