## BOYD v. BARCLAY.

1. Where the plaintiff and defendant are parties to a combination to defraud the Government of the United States, and the defendant, in the execu. tion of the fraudulent purpose, receives money from the United States, in the name of the plaintiff, and acting ostensibly as his agent, no action can be maintained by the plaintiff for the recovery of the money so received.

Writ of error to the Circuit Court of Macon County.

Action of assumpsit on the money counts. Plea, *non assumpsit*.

THE bill of exceptions taken by Boyd, at the trial, declares that sometime during the year 1836, he was the captain of a company of volunteers engaged against the Creek Indians; that the company was supplied with neither waggons or provisions by the General Government; but supplied themselves. Upon disbanding, the company determined to charge the Government for a waggon and team, and if pay was received the company was to divide it among themselves. Barclay was not a member of the company, nor had he a waggon or team engaged in the service of the Government. One of the company applied to Barclay for liberty to use his name to draw the money that a waggon and team would be entitled to, and Barclay assented. Boyd was appointed to receive the money due the company, and in the name of Barclay, and on his account for services of waggon and team, received from the General Government six hundred and sixty six dollars. The account rendered to the General Government was in the name of Barclay, and purported to be for services rendered as aforesaid, when, in point of fact, the company had no waggon or team, and no such services were rendered by Barclay. On this evidence, Boyd's counsel requested the Court so to charge the jury

Boyd v. Barclay.

"1st. If the money was obtained from the General Government by fraudulently representing to the Government, or to any officer thereof, that Barclay was entitled to it for services of his waggon and team, when in fact no such services were rendered, that the defendant received the money to the use of the Government: not to the use of the plaintiff; and that the plaintiff could not recover." This charge the Court refused, and intimated to the jury that if the money was so obtained by the defendant, the plaintiff could recover.

"2d. That if the plaintiff agreed to permit the company to use his name to draw the money, without having rendered the services, he could not recover." This charge the Court also refused to give, and charged the jury directly contrary to the request.

"3d. That if the plaintiff agreed to permit his name to be used to draw the money, and that when drawn, it was to be distributed amongst the company, he could not recover." This charge was also refused to be given.

A verdict was found and judgment rendered against Boyd, who assigns the several charges given and refused, as matters of error in the judgment of the Circuit Court.

DARGAN, for the plaintiff in error.

No counsel appeared for the defendant in error.

GOLDTHWAITE, J.—The facts of this case disclose a transaction by which the United States were defrauded of a sum of money; and one of the parties to the fraudulent transaction seeks to recover from another, the amount received from the United States, on the pretence that it was paid to the defendant as agent for the plaintiff, for a demand made out and allowed in his name.

If Barclay's name had been used without his knowledge or consent, to carry into effect the illegal object to be attained, his right to recover the money received could not be disputed, unless Boyd had been notified by the United States, to retain the money. The sole object of Barclay in seeking a recovery, might

be to return the money. If innocent of fraud, this would seem to be the legal as well as the charitable conclusion; and Boyd would not be permitted to disavow the agency assumed by him, or to allege his own turpitude to avoid the payment. But no such inference can be drawn in favor of the plaintiff in this action; for the evidence shews that he assented to the use of his name with a full knowledge of the falsity of his claim, and of the object to be attained. It cannot be reasonably expected from one who has thus lent his name and connected himself with a deliberate fraud, to pursue a remedy against a coadjutor, for the purpose of rendering justice to the injured party. The sole object of a suit by one thus circumstanced, must be to obtain the whole or a portion of the illegal plunder to subserve his own interest. No court of justice can rightfully lend its aid to assist him in such an attempt, not that the condition of the defendant is more creditable than his own, but because justice will not undertake to determine to whom the reward of successful fraud is due.

If Boyd, throughout this transaction had acted as the mere agent of Barclay, and in this character, had received the money, it might be difficult to distinguish this case from those of Tenant v. Elliot (1 B. & P. 3) and Farnur v. Russel (Ib. 295); in the former of which it was decided, that a broker who had effected an illegal policy of insurance, could not retain the money received by him from the underwriter, against his principal; and in the latter case, a carrier who had received the payment for some counterfeit farthings sent by him to a purchaser, was held accountable for the money so received, to the seller of the counterfeit farthings. These decisions go very far to sustain the position, that if the person receiving money paid on account of a fraudulent or illegal transaction, is the mere agent for another, he will not be permitted to go into evidence of the illegal transaction, *unless it is necessarily connected with the implied contract on which the action to compel the payment of the money is founded.*

But, we think it is clear from the statement of the evidence, that Boyd's agency in this transaction was a mere pretence, used

for the attainment of the money pretended to be due to Barclay for services never rendered: When collected, the money was not to be paid to him, but by the terms of the conspiracy, was to be paid, by Boyd, to the members of the company.    There was then, nothing real in the relation of Barclay and Boyd as principal and agent; and moreover, the former had no claim whatever to the money obtained; for, according to the stipulations amongst his own confederates, the money was to come to them and not to him.

To use the words of C. J. Wilmot, in Collins v. Blantern (2 Wils. 347), "the manner of the transaction was to gild and conceal the truth, and whenever courts of law see such attempts made to conceal wicked deeds, they will brush away the cobweb varnish and shew the transactions in their true light."

In this view of the merits of this case, it is clear that the first charge asked for by the defendant's counsel ought to have been given.    The second and third charges requested, do not seem to be very explicit, and do not call for a particular examination, as we conceive that the opinion we have expressed will sufficiently indicate the rules which must govern this case.

Let the judgment be reversed and the cause remanded.