## ANTON NEUSTADT

*v.*

## CYRUS HALL.

1. NEW TRIAL—*conflicting evidence.* This court will not disturb the finding of a jury, on the ground merely, that in judging of the credibility of two witnesses, whose testimony was in direct conflict, that of one was accepted in preference to the other.

2. CONTRACTS—*against public policy—will not be enforced.* An agreement which grows out of, or is connected with, an illegal or immoral act, is contrary to public policy, and can not be enforced. Courts will not aid the parties to an illegal transaction in the division of the spoils.

APPEAL from the Circuit Court of Madison county; the Hon. JOSEPH GILLESPIE, Judge, presiding.

Mr. D. GILLESPIE, for the appellant.

Messrs. L. & L. DAVIS, for the appellee.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

This was an action of assumpsit, brought by the appellant against the appellee, to recover the sum of $800. Verdict and judgment in favor of the appellee.

The only question is, whether, upon the evidence, the plaintiff was entitled to recover, the evidence being that of the parties alone.

Anton Neustadt, the plaintiff, testified: "On or about—— day of——, A. D. 1865, I met the defendant, Cyrus Hall, in the

street in Alton, Illinois, between my office and his headquarters, stopped him, and handed him $1,000 in United States treasury notes, asking him at the same time to keep it for me until Col. Kuhn came back ; he said he would do it, and take it to the bank for me; a day or two after I handed the money to Col. Hall, Mr. Ferguson, from Monticello, came to my office and demanded $200 of that money back ; I went to Col. Hall, who went to the bank to fetch $200, and gave the same to me, which I took and paid to Mr. Ferguson; this left $800 of my money in the hands of Hall.  Soon after Col. Hall was ordered South.  Mr. Ferguson gave me the $1,000 to do some services for the Monticello precinct, and to pay expenses out of it.  The reason why I gave the money to Col. Hall was, because I had no account in the bank, and I wanted Hall to know I had the money and I also wanted Hall to keep it safe for Col. Kuhn, who was about buying a brewery, and asked me for money before he left.  Mr. Ferguson told me that Hall had advised him to go to me.  All the services had been performed by myself; I had exclusive control of that business; I was at that time detached from the regiment and on the staff of the commanding general of the post.  When Col. Hall wanted to recruit two men, he came to my office and asked of me permission to do so, as a personal favor.  Col. Hall was not entitled to five cents of that money ; the money was paid to me for services in getting recruits into the 144th regiment of Illinois volunteers, to be credited to Monticello precinct, and I expended one hundred and eighty dollars of my own money by getting the men and having them mustered into the service at St. Louis, Missouri ; the $180, nor any part of it has ever been paid to me by any one."

The defendant testified as follows :  " That at the time referred to by the plaintiff, I was colonel in command of the 144th regiment Illinois infantry, stationed at Alton, Illinois, and about that time Mr. Ferguson, of Monticello precinct, came to me and said he wanted to get the privilege of enlisting ten men in my regiment for said Monticello precinct, and that they would

pay for that privilege the sum of $1,000; and I being in command of the regiment, supposed I had the lawful right to say how many men should be added to the regiment, and I told Mr. Ferguson I could not tell at that time whether I could permit the recruits to come in from Monticello until I examined the rolls and found that they would bear some more recruits. Ferguson called on me again, and I then told him to go to Captain Neustadt, as he attended to that business; he then went away; not long afterwards, Capt. Neustadt gave me a roll of money, stating that Ferguson gave it to him; I told him then to take so much out for his services as he wanted, to which he replied: ' I thank you, Colonel.' I then went to the bank, counted the money and found it to be $950, which I deposited there ; a short time after Capt. Neustadt came to me and said he could not recruit more than eight men, and that Ferguson wanted $200 of that money back; I gave $200 to Neustadt, which he has returned, as I suppose, to Ferguson ; in a short time afterwards I was ordered South, to take command of a regiment in the front."

This was, in substance, the testimony. There was some further testimony, as to subsequent occurrences between the parties, in regard to a promise or readiness to pay, but as the evidence was directly contradictory, it is not deemed material to recapitulate it.

Neustadt swears, that he only made a deposit of the money with Hall to keep for him.

· But, from Hall's testimony, it appears that he, being colonel in command of the 144th regiment, was the party to whom Ferguson made the proposition to pay $1,000 for the privilege of putting the men into the regiment; that Hall, after examining the rolls, sent Ferguson to Neustadt; that the recruits, or eight of them, were taken into the regiment, and Neustadt stated, Ferguson gave him the money.

There is a direct conflict between the testimony of the appellant and appellee, and if the jury, in judging of the credibility of the witnesses, accepted that of the appellee, in preference

to that of the appellant, this court should not disturb their verdict for so doing.

The plaintiff must recover, then, if at all, under the testimony of Hall.

According to that, the money was paid for the privilege of putting recruits into the regiment. If the regiment needed recruits, it was the duty of the parties to this suit, to recruit, and in their action, they should have been swayed by a sense of duty, solely, and should not have admitted the venal consideration of putting money into their pockets, to have come in, to influence their conduct. They were paid by the government for the performance of the duties of their offices, and it is contrary, both to good morals and the public policy, that they should exact or receive from any person, money for the performance of such duties. It can but lead to extortion, misconduct, and abuse, and should receive no countenance from a court of justice. It seems clear, that if this were a suit brought by either Neustadt or Hall against Ferguson, to recover the $1,000 under this agreement, there could be no recovery, for the reason, that the agreement was illegal, as being contrary to public policy. But if it be claimed, that inasmuch as the money was paid by Ferguson to Neustadt, the latter may maintain this action to recover the money from Hall, the answer is, that the evidence shows, that Neustadt and Hall were concerned together, in this transaction, and they both stand in *pari delicto*.

A court will not aid in the division of the profits of an illegal transaction, between associates.

In the language of Lord ELLENBOROUGH, in *Edgar et al.* v. *Fowler et al.* 3 East, 222, "We will not assist an illegal transaction in any respect. We leave the matter as we find it; and then the maxim applies, *melior est conditio possidentis.*"

The case comes within the maxim, that *ex turpi causa non oritur actio,* and has no standing in court.

The judgment is affirmed.

*Judgment affirmed.*