E. W. DURANT and others *vs.* ESAIAS RHENER.

February 27, 1880

Contract for Partnership made on Sunday.—The agreement upon which this action is based, *held* to have been an agreement for the formation of a partnership *in præsenti*, and to be void because made on Sunday.

Action brought in the district court for Washington county, for a dissolution of a partnership alleged to consist of plaintiffs and defendant, and for an accounting by defendant. The defendant denied the partnership. The referee before

whom the case was tried found the following facts as to the formation of the partnership: On January 20, 1878, that day being Sunday, the plaintiffs (who were partners as Durant, Wheeler & Co.) and the defendant verbally agreed on the terms of a contract as follows: "That Durant, Wheeler & Co. and the defendant should put up a large quantity of ice, for sale to the southern market; that the ice should be put up at Baytown, in this state; that the defendant should superintend the putting up of such ice without charge for his personal services, and that the plaintiffs should furnish all the money necessary to pay the expenses of putting up the same. The plaintiffs were just about starting for the south, and it was further agreed that they should look over the market and determine whether it was safe and advisable to put up the ice; and if they decided that it was so safe and advisable, they were to notify the defendant to that effect, who, on such notification, was to commence the work of getting out and putting up the ice, not to exceed 5,000 tons. It was also arranged that David B. Loomis, the cashier and book-keeper of the plaintiffs, and who had charge of plaintiffs' financial business, was, on behalf of the plaintiffs, to furnish the defendant with all the money necessary to carry out the contract, whenever the defendant should call on him for that purpose. The profits and losses of the enterprise were to be shared equally between the plaintiffs and the defendant."

The referee also found that plaintiffs went south, and investigated the ice market, and on February 11, 1878, at New Orleans, wrote to Loomis, "instructing him to see defendant at once and tell him to put up 5,000 tons of ice, in accordance with the arrangement previously made." Under this direction, communicated to him by Loomis, the defendant put up 2,300 tons of ice, "and he regarded the plaintiffs as having an equal interest in the ice with himself up to the time when he subsequently sold the same. The defendant paid all the expenses, and furnished all the labor required in putting up the ice, and never received any money from the plaintiffs for that

purpose, although the plaintiffs, through their agent, Loomis, were at all times ready and willing to furnish all the money requisite to carry out the enterprise, had the defendant called on them for the same." The defendant afterwards sold the ice at a profit of $2,503.70, and the referee ordered judgment for plaintiffs for one-half this sum, his conclusions of law being stated, in substance, in the opinion.

The defendant moved the court "that the conclusions of law found by the referee be vacated and set aside, upon the ground that the same do not follow and are not true as a matter of law from the facts found," and "failing in the above that a new trial may be granted to the defendant, for errors of law," etc. The motion was denied by *Crosby*, J., and the defendant appealed.

*James N. & Ira W. Castle* and *L. E. Thompson*, for appellant, cited *Brimhall* v. *Van Campen*, 8 Minn. 1 (13;) *Finley* v. *Callender*, 8 Minn. 23 (41;) *Finley* v. *Quirk*, 9 Minn. 179 (194;) *Brackett* v. *Edgerton*, 14 Minn. 174; *Webb* v. *Kennedy*, 20 Minn. 419; *Day* v. *McAllister*, 15 Gray, 433.

*McCluer & Marsh*, for respondents, cited *Adams* v. *Gray*, 19 Vt. 358; *King* v. *Flemming*, 72 Ill. 21; *Bank* v. *Werts*, 13 Ind. 203; *Com.* v. *Kendig*, 2 Pa. St. 448; *Hilton* v. *Houghton*, 35 Me. 143; *Clough* v. *Davis*, 8 N. H. 157; *State* v. *Young*, 23 Minn. 551.

BERRY, J. Unless the plaintiffs can establish the formation of the alleged partnership between themselves and the defendant, they cannot maintain this action. The finding, of the referee, who tried the case below, is in effect that the arrangement made on Sunday, between the parties to this action, was not a complete agreement for the formation of a partnership *in præsenti*, but an agreement upon the terms of a partnership to be formed *in futuro;* and that a partnership having been formed on a subsequent secular day, its formation is not invalidated by the fact that it was consummated in accordance with the arrangement made on Sunday. In our opinion this conclusion of the referee is not justified by his

finding of facts. To our minds but one inference can be justly drawn from the finding of facts, or from the testimony, and that is that the Sunday "arrangement," as it is called by the referee, was an agreement for the formation of a partnership then and there.

The finding and the evidence of the fact that it was a part of this arrangement, that, upon looking over the market, the plaintiffs, if they deemed it safe and advisable, were to notify the defendant to proceed to put up ice, and that he was not to proceed until so notified, has, in our opinion, no tendency except to show that the business of the partnership, which was completely formed on Sunday, was not to be entered upon until such notice. It has no tendency to show that the partnership agreement was incomplete until the notice was given. It follows that, upon the finding of the referee, the partnership agreement upon which this action is attempted to be based was made on Sunday. It is therefore void, and no action can be maintained upon it.

The order of the court below, refusing to vacate the referee's conclusion of law, is reversed, and the case remanded for judgment for the defendant.