(Decided January 4th, 1898)

----

## CHARLES A. SPIES *vs.* HESSE ROSENSTOCK.

*Gaming Contract—Making Bets on Horse Races in Another State— Partnership to Make Books on Races—Consideration of Promissory Note.*

Making bets on horse races is unlawful under Statute of 9 Anne, ch. 14 (in force in Maryland), and under the Act of 1894, ch. 232, except in the cases expressly provided for. And where a partnership is formed in this State for the purpose of making books on races to be run in another State, no recovery can be had on a promissory note made by one of the partners to the other as his contribution to the capital of the firm, although book-making on races was not unlawful in the State where the races were run.

A contract to form a copartnership for the purpose of doing a thing forbidden by law is itself illegal.

When the consideration of a promissory note is money advanced for the purpose of gambling, the note is void.

In an action between the original parties to a promissory note, evidence as to the consideration is admissible.

Appeal from the Superior Court of Baltimore City (RITCHIE, J.) The appellant, as payee of a promissory note for $750, sued the maker, Rosenstock, and S. J. Stargardtner as endorser. The trial Court instructed the jury that the plaintiff was not entitled to recover, because the note sued on was given in part execution of a contract which was contrary to public policy and therefore void.

The cause was submitted to the Full Bench on briefs by *Edward Israel* and *Robert W. Mobray* for the appellant, and *Frederick C. Cook* for the appellee.

FOWLER, J., delivered the opinion of the Court.

The plaintiff sued the defendant to recover on a promissory note for the sum of seven hundred and fifty dollars. The defendant pleaded non-assumpsit.

It appears from the testimony of the plaintiff that he and the defendant " were copartners as book-makers for the races to be run at the two tracks in Virginia in the year 1895, and that the defendant not having the money to put into the business, the plaintiff agreed to furnish the capital of the same to the amount of fifteen hundred dollars, and the defendant gave him the note sued on for his one-half of the capital of said business ; that the said business had been unsuccessful and said sum of $1,500 was lost therein."

The defendant was asked to state the circumstances under which the note sued on was given, but the plaintiff objected. This objection was overruled, and the defendant was allowed to answer the question. He testified that the note was his genuine note, and that the endorsement " S. J. Stargardtner " was also genuine ; that the plaintiff and defendant had entered into an agreement in Baltimore City to engage in the business of book-making on certain races to be run in 1895 on courses in Virginia, and that at the time the said partnership was formed it was agreed that the sum of $1,500 was to be furnished by the plaintiff, and that the note sued on was to be and was given by the defendant for his share of the capital." It further appears from the testimony that " the business of book-making on horse races is a business in which the book-makers offer bets at certain odds on particular horses in the races, and take all such bets as persons may choose to make with them at the odds offered, and upon the receipt of the money from the persons willing to bet with them, the book-makers issue tickets to them showing the terms of the bet, and if the

horses backed by the book-makers lose, they pay the win-
ners, and if the horses win they keep the money received
from the customer and pay out nothing "   *   *   *   "that
the business of book-making is betting on horse races, and is
called book-making, because the bets are booked or a
record kept of them in a book."

The plaintiff also offered testimony tending to prove that
the races in question were authorized by the laws of Vir-
ginia, and at the close of the case asked the Court to instruct
the jury that if they believed from the evidence that the
defendant executed the note sued on and had not paid any
part thereof, the plaintiff was entitled to recover the amount
of the note with interest.   But the learned Judge below
refused this prayer, and instructed the jury that upon the
uncontradicted testimony the note was given in part execu-
tion of a contract which was contrary to public policy and
therefore void, and that the plaintiff was not entitled to re-
cover.   The verdict and judgment being against him, the
plaintiff has appealed.

The defendant was permitted to state the circumstances
under which the note was given.   This constitutes the first
exception.   It is clear, however, that there was no error in
this ruling, for it is settled that as between two immediate
parties, as here between the maker and the payee, "while
the note itself is *prima facie* evidence of the consideration,
the question of consideration is always open."   *Ingersoll* v.
*Martin*, 58 Md. 73.   ·

Nor do we think there was any error in the instruction
given the jury upon which is based the second exception.  As
we have seen the jury were instructed by the learned Judge
below that the note sued on was by the uncontradicted evi-
dence in the case given in part execution of a contract which
was void, because contrary to public policy.  Both the plain-
tiff and defendant testified that the note was given for the
defendant's contribution to the capital of the partnership
formed between them to carry on the so-called business of
betting on horse races in Virginia.  It requires neither argu-

ment nor authority to show that if the thing to be done is illegal, the contract of co-partnership for the purpose of doing that thing is equally illegal, for otherwise it would only be necessary to form a copartnership or a corporation in order, with impunity, either to violate the law, or prosecute a business contrary to the public policy of the State. The only question we need consider then is whether the business of betting on horse races is contrary to the public policy of this State.

The Statute of 16 Charles II, chapter 7, and that of 9 Anne, chapt. 14, are both in force in Maryland. *Hook* v. *Boteler,* 3 H. & McH. 348; *Gough* v. *Pratt, Admr.,* 9 Md. 533; *Emerson* v. *Townsend,* 73 Md. 224; *Alexander Brit. Statutes,* 475 and 689. By the first, which is entitled " An Act against deceitful, disorderly, and excessive gaming," it is provided among other things that those who win bets on horse races and other games by any fraudulent means or device shall forfeit treble the sum so won ; and by the second sec_ tion, that notes given for money lost at games, including therein horse races, if such note exceed one hundred pounds, shall be void, and the payee shall forfeit treble the sum thereof. And by the second statute, passed nearly fifty years after the one just cited, which is entitled "An Act for the better preventing of excessive and deceitful gaming," it is provided that *all* notes, bills, &c., where the whole or any part of the consideration shall be for money won by gaming shall be void. As the word gaming, as used in the Statute of Charles, included betting on horse races, and as the Statute of Anne was passed for the purpose of better preventing the evils of gaming, such betting, and the giving of notes for money thereby lost, would seem to be within the latter statute, although not expressly prohibited thereby. And it was so held in *Blaxton* v. *Pye,* 2 Wilson, 309; *Goodburn* v. *Marley,* 3 Str. 1159; *Grace* v. *McElroy,* 1 Allen, 563; *People* v. *Weithoff,* 51 Mich. 203. But we are not left in any doubt as to what the policy of this State is now in regard to betting on horse races, whatever it may have been

heretofore, for by the Act of 1894, chap. 232, it was enacted that "It shall be unlawful for any person or persons or association of persons to gamble or make books and pools on the result" of any horse race or race of any kind, except for the space of thirty days as therein provided. The violation of this Act is declared to be a misdemeanor punishable by fine not exceeding five hundred dollars. In the recent case of *Dycer* v. *State*, 85 Md. 250, we said in commenting upon this Act, BRYAN, J., delivering the opinion of the Court : " The comprehensive, absolute and unqualified expressions used by the Legislature, show that they regarded this species of gambling as a serious evil and desired to suppress it. But for reasons which they considered satisfactory, they saw fit to permit it under certain circumstances for the space of thirty days in any one year." The contention of the appellant, therefore, that the making of books on horse races is not gambling, within the meaning of the law, will not avail him in the face of this Act and our construction of it. In support of his view he cites a number of decisions of other States, and also the case of *James* v. *Gamble*, 63 Md. 251. This latter, however, has no application to the question now before us. It was there held that the selling of pools on horse races and the keeping of rooms for that purpose, did not constitute a criminal offence within the meaning of the statute against gambling as then existing. But, as we have seen pool selling and bookmaking is now a misdemeanor, a criminal offence, under the Act of 1894, unless such as is permitted by the express terms of that Act, or expressly excluded from its absolute and unqualified prohibitions. The facts that the races on which the bets were made were run on grounds owned and controlled by associations or driving clubs incorporated under the laws of Virginia, and that such races were authorized by the laws of that State, do not legalize here the bets thereon made there or here, unless such bets be within and are clearly permitted by the Act of 1894. And that such is the case no proof has been offered. Nor would it be

possible to offer any such proof, unless we admit, which we are not inclined to do, that our Act under any circumstances was intended to make legal such bets made here or elsewhere on races run in other States. Its object was, undoubtedly, to allow on certain conditions, betting on races run in this State as therein provided—all other such betting is declared illegal.

But in addition to what we have said it seems to be clear that the note in question having been given for money advanced or loaned for the purpose of gambling is clearly within the decision in *Emerson* v. *Townsend*, where we said, BRISCOE, J., delivering the opinion of the Court, that a note is utterly void, where even a part of the consideration was for money loaned and advanced for gambling purposes.

It follows that the judgment appealed from · will be affirmed.

*Judgment affirmed.*

(Decided January 4th, 1898).