KATE L. SIMPSON *et al.* v. WILLIAM C. TENNEY *et al.*

PARTNERSHIP—*Contract—Consideration—Trust—Accounting.* Plaintiffs found a tract of land suitable for subdivision and sale as town property, made a preliminary examination of the same, and negotiated with the owner for its purchase. Not having the means for purchase, they presented the matter to defendants, and an agreement was made that the land should be purchased, the legal title to same to be taken in the name of the defendants, who were to hold it in trust for the benefit of all. Defendants were to furnish the purchase-price, and plaintiffs to plat and subdivide the tract, to put it into a salable condition, and advertise and sell the lots. Sales were to be made by the mutual consent of all. Defendants were to be first reimbursed for the money advanced, and then receive one-fourth of the net profits, and plaintiffs were to receive three-fourths of the net profits. The lots remaining unsold at the end of a year were to be divided between the parties in the proportion above named. Neither party was to charge for the time and service devoted to the enterprise. Sales and conveyances of a large number of lots were made in pursuance of the contract, frequent settlements were made, and the enterprise was conducted without contention for more than five years, when defendants denied that plaintiffs had any interest in the unsold lots, and refused to further recognize or carry out the contract. *Held,* That the parties are to be regarded as partners in the enterprise; that the defendants held the land in trust for the benefit of all, and to be disposed of as the contract provides; that the consideration contributed by the plaintiffs is sufficient to sustain the contract; and that the plain-

36—41 KAS.

tiffs are entitled to maintain an action for an accounting of the business done to determine the interest of each in the unsold property, and for a distribution of the assets of the partnership.

### *Error from Wyandotte District Court.*

ACTION for an accounting and an adjustment of rights growing out of a joint transaction in real estate. Trial by the court, and judgment for defendants on April 16, 1887. The plaintiffs, *Simpson* and another, bring the case to this court.

*Alden & McGrew,* and *J. B. Scroggs,* for plaintiffs in error.

*Stevens & Stevens,* for defendants in error.

The opinion of the court was delivered by

JOHNSTON, J.: This is an action for an accounting between the parties hereto, and an adjustment of the rights of each, growing out of a partnership transaction in real estate.

On July 19, 1878, a 13-acre tract of land, now constituting a part of Kansas City, was purchased by these parties from Silas A. Barnett for $1,500, with a view of subdividing it into lots, blocks, streets and alleys, and selling the same for profit. S. N. Simpson found the investment, made the preliminary examination of the land and of its availability for subdivision and sale, discovered the owner, and ascertained the price and terms upon which it could be purchased. He thereupon presented the matter to Tenney, who agreed to furnish the $1,500 with which to make the purchase, he to be reimbursed out of the proceeds of sales. Simpson was to subdivide and put the tract into a salable condition and advertise and sell the same, and the proceeds of sale, after paying the purchase-price and expenses of sales, were to be divided between them, Tenney taking one-fourth and Simpson three-fourths. The legal title of the land was to be taken in the name of Tenney, who advanced the purchase-money, who was to hold the same in trust for the benefit of all the parties and execute conveyances for such portions as should be sold, the

proceeds to be divided in the proportion mentioned. The land was conveyed by the owner to Tenney in accordance with the agreement, and the Simpsons then proceeded to survey and subdivide it and to advertise and sell the same. Subsequently, and on August 5, 1878, the parties reduced their agreements to writing and duly signed the same. The following is a copy of the written contract: ·

## "CONTRACT.

"Wm. C. Tenney and Elizabeth E. Tenney his wife, parties of the first part, Kate L. Simpson and S. N. Simpson, her husband, agent, parties of the second part. Consideration by parties of the first part, paying fifteen hundred dollars to Silas A. Barnett for thirteen acres of land in Wyandotte, commencing at the northeast corner of the southwest quarter of the southwest quarter of sec. 10, tp. 11 S., R. 25 E., in Wyandotte county, Kansas, thence east 28 poles, thence north 30 and 60-100 poles, thence west 68 poles, thence north 30 and 60-100 poles, thence east 40 poles, to the beginning; for which payment for which land parties of the first part receive the deed for the benefit of parties of the first and second parts, and according to the terms of this agreement; also making out all papers, receiving, paying and accounting for all moneys and executing deeds.

Consideration by parties of the second part, services in preliminary examination of land, arranging in advance for sales, and sales made and to be made by them.

Parties of the first part to receive one-fourth of the net profits after being reimbursed the fifteen hundred dollars, for which no interest is to be charged by parties of the first part; and parties of the second part three-fourths of net profits.

Parties of the second part, moreover, to receive from parties of the first part one-tenth of net receipts monthly, commencing July 19th, 1878, as an advance on their three-fourths of profits. Sales to be made only by mutual consent of parties after party of the first part has been reimbursed for the fifteen hundred dollars advanced. All interest growing out of sales, notes, moneys, or property, after paying fifteen hundred dollars to parties of the first part and necessary expenses, shall be divided as above, neither party charging for time. Land remaining unsold after one year from date to be divided by agreement between the parties in the proportion above named. If the parties are unable to agree, they shall leave the decision

to three intelligent, fair-minded referees to be agreed upon by the parties.

"Done August 5, 1878, and signed by us, the parties of the first and second parts.        WM. C. TENNEY.

ELIZABETH E. TENNEY,
By her attorney in fact,
WM. C. TENNEY.
KATE L. SIMPSON.
S. N. SIMPSON."

Afterward a large number of the lots into which the tract was subdivided were sold by mutual consent of the parties, and conveyances were made by the Tenneys to the purchasers. The proceeds arising from the sales were devoted to paying the cost of the land and the expenses incurred, and the balance was divided between the parties, three-fourths to the plaintiffs and one-fourth to the defendants. Within about a year from the time of purchase the profits derived from the sales were sufficient to reimburse the Tenneys for the money they had advanced, but a division of the lands remaining unsold was not then asked for by either party. They continued to make sales on partnership acccount until the fall of 1883, and the investment proved to be an exceedingly profitable one. During that time several settlements were made, and the accrued profits were apportioned according to the rule stated in the contract. The last accounting and settlement made between the parties was in June, 1883, and after that a number of sales and conveyances were made before the dispute arose which ended in the present litigation. Later in that year, the defendants refused to divide the accumulated profits, or to further carry out their contract. They claimed that they were the exclusive owners of the property, and that plaintiffs had no interest in it and no further right to participate in the profits arising from its sale. On January 21, 1884, this action was begun, and a trial was had in September, 1886, and the court, after holding the case under advisement, rendered judgment on April 16, 1887, "in favor of said defendants and against said plaintiffs upon plaintiffs' cause of action and for costs."

This is one of a series of real-estate transactions between these parties, and is quite similar to cases which we have already examined and decided. (*Tenney v. Simpson*, 37 Kas. 353; and *Tenney v. Simpson*, 37 id. 579.) The purpose and plan of this enterprise are substantially the same as those upon which the reported cases are founded. Together they purchased land to be sold for profit and not as a permanent investment. Simpson searched out the land and its owner, made preliminary examination, and, needing a partner who would advance the money with which to make the purchase, he applied to Tenney, who readily appreciated and entered into the advantageous enterprise. The skill and service of Simpson were placed against the money of Tenney. As Tenney advanced the purchase-price, the title of the property was placed in him, who was to hold it in trust for all the owners, and the nature and terms of the trust are so clearly expressed in the written contract as to put them beyond all doubt or dispute. This transaction is very similar to the cases passed upon, except as to some of the details; and within the principles there announced it follows that the judgment in this case is erroneous. As the same general principles must control in the present case, it is unnecessary to repeat or amplify the argument made in the two cited cases. Upon the evidence, the plaintiffs were clearly entitled to the relief which they sought. The purchase of the land for the purpose and upon the terms stated is not denied. The execution of the contract is conceded. The making of sales and conveyances of the lots by mutual consent in accordance with the stipulations of the contract, continuing over a period of five years after engaging in the enterprise, is admitted. It is agreed that the proceeds of the sales have been applied as the contract prescribes, and that frequent accountings of the sales, receipts and expenses have been made, and the profits settled and divided by the same rule; that in the latter part of 1883 the defendants refused to make further sales of the property, to further account for the partnership funds in their hands, and to further carry out the contract, is well established. After recognizing and

carrying out the contract for more than five years, and after the lots remaining unsold have become exceedingly valuable, the defendants now seek to repudiate the contract and to deny its obligations for several reasons, and one is the inadequacy of the consideration paid by the plaintiffs. As the contract is in writing and duly signed by the parties, it imports a consideration. Aside from that, it stated that the consideration paid by the plaintiffs was "services in preliminary examination of land, arranging in advance for sales, and sales made and to be made by them." And this is certainly sufficient to support the contract. Looking back to the preliminary action and arrangements preceding the execution of the written contract, as the court properly may to determine the relation of the parties and what was involved in the consideration stated, it is easily seen that a sufficient consideration was contributed by the plaintiffs to sustain the contract. Neither can the defendants repudiate the contract and retain the property jointly owned by the partners because of alleged fraud or fraudulent representations made when the contract was executed. It is claimed that Simpson represented to Tenney that he had procured purchasers for thirty of the lots at $50 per lot, and that Tenney, relying on these representations, was induced to join Simpson in the enterprise, but that as a matter of fact the plaintiffs had not secured purchasers and no sales had been made. Simpson did state, while negotiating with Tenney, that he had shown the land to several parties, who had agreed to buy about thirty of the lots in case the land was purchased, and he gave Tenney the names of the proposed purchasers. He further stated that he thought there would be no difficulty in selling a sufficient number of lots within a year to reimburse Tenney for the $1,500 advanced. The testimony shows that Simpson had negotiated with parties, some of whom became purchasers and others did not. In the nature of things, contracts for the sale of land to these parties could not be made, for the land had not yet been purchased, and until Tenney and Simpson arrived at an agreement it was not certain that it would be purchased. Simpson

had taken the parties upon the land and shown it to them, and he stated to Tenney that in his opinion they would purchase the lots if a title could be given; and the fact that they failed to do as was expected of them does not establish that the statements made were untrue, or that there was any fraud on the part of the plaintiffs. However, if all claimed by the defendants in this respect was true, their subsequent action would constitute a complete waiver. According to their testimony they learned within a month after the contract was made that all of these parties spoken of by Simpson would not purchase lots; and with this knowledge they proceeded, and permitted the plaintiffs to proceed, to carry out the contract, and for more than five years after that time they continued to carry on the business without making any claim of fraud or deception. From the testimony we are inclined to think that the statements made by Simpson did not amount to fraud against Tenney; but however that may be, the defendants, having permitted the plaintiffs to conduct the business for so long a time upon the faith of the agreement, cannot now claim that the contract is invalid. It was to the advantage of the partnership that no more sales were made at $50 per lot, as the price was soon advanced, and even some of those that were sold at that price were repurchased by the partnership and sold again for a greater sum.

The defense of non-performance is equally groundless. The interest of the plaintiffs in the land held jointly with the defendants was not subject to forfeiture for a failure to sell a certain number of lots within a certain time, nor for any other reason. The proceeds of sales made during the first year were about sufficient to reimburse the defendants for what they had advanced; and even if that had been a condition of the contract and the moneys received had been insufficient to reimburse the defendants, the failure of the plaintiffs would have been waived by the subsequent conduct of the defendants. The case is not to be treated as though Tenney, owning the lots, had sold the same to plaintiffs on certain conditions, who were now seeking specific performance. The lots were owned

by all, and not by Tenney alone.    They were merely partners in the transaction, and the interest of each and the terms of partnership were clearly defined in the written contract.    There was no provision in that contract which would operate to extinguish the interest of any of the partners on account of a failure to accomplish all that was anticipated, and certainly nothing to deprive any partner of the right to an accounting and closing-up of the partnership affairs, and the distribution of the assets according to the agreement and the rights of each party, whatever they might be.    This was the purpose of the action, and this the plaintiffs were entitled to.

*Contract; parties to be regarded as partners; accounting.*

We have examined all the points made by the defendants, but in view of what has been said and what has been decided in former cases, further discussion is needless.    Although defendants complain bitterly that they were led into the investment by misrepresentation of the plaintiffs, and that it resulted in great injustice to them, it would seem, however, that there is little reason for the complaint.    It has turned out that the plaintiffs induced them to enter into a most successful enterprise.    Between $7,000 and $8,000 was obtained from sales made, and counsel for defendants stated at the argument that the property remaining unsold was worth between $50,000 and $60,000.    The plaintiffs may have derived more benefit than the defendants in proportion to the consideration contributed by each; but that was a matter of agreement between them, and one-fourth of the amounts mentioned is certainly a liberal margin of profit on a $1,500 investment.

The judgment of the district court must be reversed, and the cause remanded for a new trial.

All the Justices concurring.