HOGE vs. GEORGE, Admr.

(No. 939; Decided August 5, 1921; 200 Pac. 96.)

CONTRACTS—JOINT ADVENTURE—DIRECTED VERDICT—EVIDENCE—DIVISION OF PROFITS—INTENTION OF PARTIES—CONTRACTS VOID ON GROUNDS OF PUBLIC POLICY—DEFENSES—STATUTE OF FRAUDS—PRESUMPTION THAT PARTNERS SHARE EQUALLY IN PROFITS—INSTRUCTIONS.

1. The relation of joint adventurers is, controlled largely by the law of partnership but the two are not identical; a joint adventure being generally defined as an enterprise undertaken by several persons jointly.

2. In an action to recover a share of the profits of a joint adventure, wherein the existence of the relationship is in issue and there is substantial evidence of an intention of the parties to join their efforts in furtherance of the

enterprise for their joint profit, a motion by defendant for a directed verdict was properly over ruled.

3.  A formal agreement to enter into a joint enterprise specifying interests and mode of profit sharing is unnecessary to establish the relation upon an issue involving its existence if there be a joint enterprise proven, either by direct evidence of a mutual agreement to that end, or, by proof of facts and circumstances from which it is made to appear that such enterprise was in fact entered into by the parties, the law fixes their rights.

4.  In an action to recover a share of the profits of a joint adventure evidence held sufficient to establish an agreement of joint adventure between the parties.

5.  When profits have accrued from the purchase and resale of land in pursuance of an oral contract of joint adventure, the statute of frauds will not affect the right of a party to the contract to recover a share of such profits even though all of the purchase money was furnished by the other party who took and transferred in his name alone the title to the land.

6.  An instruction that if the jury should find from the evidence that the parties to an action had agreed that plaintiff should share in the profits of a land transaction, and that the only consideration on the part of plaintiff therefor was an agreement by him to induce a third person to whom he, plaintiff bore a confidential relation of trust, to transfer his interests in a land option, such consideration would be immoral and an agreement predicated thereon unenforceable, while a correct statement of the law was inapplicable in a case where the evidence failed to establish a fiduciary relation between plaintiff such third person.

7.  That the consideration underlying a contract of joint adventure is invalid on grounds of public policy and the contract itself for that reason void, is a defense available in legal as well as in equitable actions, involving claims or interests thereunder.

8.  An instruction that testimony in regard to verbal statements made in connection with past transactions should be received with caution because of its probable inaccuracy and imperfections of memory was improper. While similar instructions as to testimony of ''oral admissions'' have been upheld, the rule is inapplicable to testimony of an oral contract upon which a suit is based.

9.  In an action by a party to a joint adventure to recover an
equal share of the profits accruing therefrom, there being
no evidence of an express agreement as to the division
of profits, plaintiff is entitled to the benefit of the presump-
tion that the parties should share equally, and the giving
of an instruction under which the jury might infer that
such presumption might be disregarded, and a division
of the profits determined by the jury in accordance with
the respective contributions of the parties was revers-
able error.

ERROR to the District Court, Laramie County, HON. WIL-
LIAM C. MENTZER, Judge.

Action by James H. Hoge against Ora Haley for the re-
covery of $22,750.50 claimed as one-half the profits of a
joint adventure in the purchase and resale of ranch prop-
erty. There was a verdict and judgment for plaintiff and
plaintiff brings error and defendant cross error. Pending
proceedings in error Haley died and Robert L. George, his
administrator, was substituted by stipulation as defend-
ant in error. Material facts relating to the transaction in
suit are stated in the opinion.

*Corthell, McCollough and Corthell,* for Plaintiff in error.

Plaintiff could recover only on the theory of equality of
interest in view of the circumstances and nature of the
transaction and the authorities are uniform in support of
this proposition. (23 Cyc. 459; 3 Kent's Commentaries 13th
Ed. 28, 29; Parsons on Partnership, 258; Paul v. Cullun,
132 U. S. 539; Stein v. Robertson, 30 Ala. 286, 292; Brewer
v. Brown, 68 Ala. 210, 211; Saunders v. McDonough, 191
Ala. 119; Griggs v. Clark, 23 Cal. 427, 430; Morton v. Gor-
don, 16 Ill. 37; Farr v. Johnson, 25 Ill. 430; Ligare v. Pea-
cock, 109 Ill. 94; Moore v. Bare, 11 Ia. 198; Johnson v.
Jackson, 139 Ky. 751; 114 S. W. 260; Hutchinson v. Jubois,
45 Mich. 143, 145; Randle v. Richardson, 53 Miss. 176; Mil-
ler v. Hale, 96 Mo. App. 427; 70 S. W. 258; Wetmore v.
Crouch, — Mo. — 51 S. W. 738; Lind v. Webber, 36 Nev.
623; 134 Pac. 461; Botsford v. Van Ripper, 33 Nev. 156;
110 Pac. 705; Ratger v. Ratger, 28 N. J. L. 136; Ryder v:

Gilbert, 16 Hun. 163; Jones v. Jones, 1 Ired. Eq., wwq; Worthy v. Brower, 93 N. C. 344; Guis v. Coffinberry, 39 Ore. 414; 65 Pac. 358; Frazer v. Linton, 183 Pa. St. 186; 38 A. 589; Rankin v. Block, 38 Tenn. 650; Broadfoot v. Frazer, 73 Vt. 313; 50 A. 1054; Zech v. Bell, — Wash. — 162 Pac. 363.) The instruction given at request of defendant that the jury might ignore the presumption of equality of interest which obtains in the absence of an agreement as to interests and determine the basis of division of profits in accordance with the respective contributions of the parties, was erroneous. Instruction No. 14 as to the burden of proof was also erroneous and likewise instruction No. 13 which was of a similar character. It was the duty of the court to set aside the verdict. (Kester v. Wagener, 22 Wyo. 513; Gustafson v. Gustafson, 99 N. W. 631; Melzner v. Raven Copper Co., 132 Pac. 552; Noding v. Denison Ry. Co., 54 S. W. 412; Taunton Mfg. Co. v. Smith, 26 Mass. 11; Ray v. Jeffries, 5 S. W. 867; Thompson v. Burtis et al, 70 Pac. 603; Dunn v. Blue Grass Realty Co., 173 S. W. 1122; Hileman v. Maxwell, 149 N. W. 44; Albers v. Chicago B. & Q. ·145 N. W. 1013; James v. Hood, 142 Pac. 162; Carrier v. Donovan, 89 A. 894; Johnson v. Homer, 136 Pac. 1169; Clark v. N. W. N. H. & H. Co., 87 A. 206.) The unfounded contention of breach of trust prejudiced plaintiff and Instruction No. 10 relating thereto was error, being wholly supported by the evidence. And likewise Instruction No. 11 which included similar opinions. There was absolutely no evidence of a fiduciary relation between Hoge and Ross, nor evidence from which an agency or relation of trust might be implied. In re Thomas 199 F. 214; Curlett v. Newman, — Va. —, 3 S. E. 578; Collar v. Ford, 45 Ia. 331, 333; Matlack v. Paregoy, — Mo. App. —, 173 S. W. 8, 10; and even if there had been such relation the fact that Ross. fixed his own price and exercised his own discretion in dealing with Haley and permitted Hoge to represent adverse interest, would render the fact of such relationship immaterial. (31 Cyc. 1449; Alexander v. N. W. Christian, 57

Ind. 466; Rupp v. Simpson, 16 Gray 398; Ranney v. Donovan, 78 'Mich. 318; Bayly v. Bryant, 24 Pick 198; Barry v. Schmidt 57 Wis. 172; 15 N. W. 24.) The transaction had been completed and the defense of trust relationship was not available to Haley. (Brooks v. Martin, 2 Wall. 70; Planters Bank v. Union Bank, 83 U. S. 483; Union Pacific v. Durant, 95 U. S. 576; Wann v. Kelly, 5 F. 584; Richardson v. Welch, 11 N. W. 172; Gilliam v. Brown, 43 Miss. 641; Peters v. Grimm, 149 Pa. St. 163; 24 A. 192; McDonald v. Lund, 13 Wash. 413.) Instruction No. 3 was erroneous and is unsupported by authorities. (2 Thompson on Trials, 2431); except in states where the principle is supported by statute. (Thompson v. Purdy, 45 Or. 197; 77 P. 13 Gleason v. Denson, 65 Or. 199; 132 O. 530; Mims v. Brook & Co., 3 Ga. App. 247; 59 S. E. 711; Blume v. Chicago, St. Paul and Milwaukee R. R. Co., 133 Minn. 348; 158 N. W. 418.)

*C. P. Arnold* and *Clark & Haggard,* for Defendant in Error.

The instructions given by the trial court with respect to the division of profits in the absence of an express agreement between the parties was not substantially different from the instruction requested by plaintiff on the same branch of the case. If the instruction given was erroneous it was an invited error of which plaintiff cannot complain. (4 C. J. 709, 711.) The presumption of equality of interest in the absence of an express agreement is a presumption of fact that may be rebutted by the general circumstances or acts of the parties. In more than one-half of the cases cited by plaintiff in error no question of division of profits was involved, and in most of the remaining cases there was no issue made with respect to the matter of division. The correct principle is as cited in 30 Cyc. 45; 22 Am. Ency. 102. Respective rights to profits are fixed by respective contributions. The only case dealing with circumstances similar to those here involved are Fleischman v. Gottenchalk, 70 Md. 523; 17 Atl. 384. Where the division was governed

by the statements and acts of the parties, Goss v. Lannin, 170 Ia. 57. The instruction as to breach of trust was properly given since there was evidence before the jury under which it might have been applied. Hoge was undoubtedly the agent of Ross, and moreover bore a close relation of personal friendship to him. Kennedy v. Lonabaugh, 19 Wyo. 352 does not sustain the contentions of plaintiff in error as to confidential relations. The true principle is set forth in McMullin v. Hoffman, 174 U. S. 639. The defense of breach of trust is available in law actions as well as in equity cases, (13 C. J. 514; Pittsburgh Dredging Co. v. Monongahela Company, 139 Fed. 780; Thomas v. Caulkett, 57 Mich. 392; 24 N. W. 154; Skirvin v. Gardner, 36 Okl. 613; 129 Pac. 729; Bollman v. Loomis, 41 Conn. 581; Stewart v. Ranch Co., 128 U. S. 383.) Instruction No. 3 relating to oral statements was proper. (Scurlock v. Boone, 142 Iowa 580; 120 N. W. 313.)

*C. P. Arnold* and *Clark & Haggard,* for Defendant in Error on Cross Petition in Error.

The alleged contract was void under the statute of frauds. Joint adventures were unknown to common law and are governed by their law of partnerships. (9 Cyc. 248; 23 Cyc. 453; Rees v. Rhoades, (Wyo.) 165 Pac. 449; Goss v. Lannin, 152 N. W. 43.) Plaintiff contributed nothing whatever to the enterprise. The conduct of the parties indicated a lack of intention to form the relation of joint adventures but indicates an understanding between them that Hoge acted in the capacity of a broker. Hoge never acquired interest in the land and was precluded from claiming an interest by the statute of frauds. (Section 3751 Comp. Stats. 1910.) Suit was brought upon the theory that he had acquired an interest in the land, a theory untenable in view of the provisions of the statute of frauds. (Schultz v. Waldons, 60 N. J. Eq. 71; 47 Atl. 187; Norton v. Brink, 110 N. W. 669; Richards v. Grinnell, 18 N. W. 668.) A contract of partnership for dealing in lands is within the statute of frauds. (Bird v. Morrison, 12 Wis. 138; Clarke v. McAuliffe, 81

Wis. 104; McMillan v. Pratt, 89 Wis. 612; 62 N. W. 588; Seymore v. Cushman, 100 Wis. 580; 76 N. W. 769.) A parol agreement for the joint purchase of land, title to be taken in the name of one of the parties is void. (Morton v. Nelson, 145 Ill. 586; Larkin v. Rhodes, 5 Port. Ola. 195; Clancy v. Crane, 17 N. C. 263; Goldsteen v. Vathan, 158 Ill. 641; Parsons v. Pheelan, 134 Mass. 109; Claywater v. Wetherow, 27 Mo. 2411; Scheurer v. Cochem, 105 N. W. 573; Nester v. Sullivan, 111 N. W. 85; Raub v. Smith, 28 N. W. 676; Putman v. Hodge, 36 A. 605; Wheeler v. Hall, 66 N. Y. S. 257; Bryan v. Douds, 62 A. 8282; Bowen v. Sayles, 49 A. 103; Reilly v. Woolbert, 72 So. 10 (Ala.) Hoge contributed no money and provided no money for a joint adventure. He did not hold himself out as a partner. Haley's knowledge of the land had been acquired from Hoge through former efforts of Hoge to sell it to Haley. Hoge was in charge of the Ross interests. The verdict of the jury for $2,500.00 favoring plaintiff is unsupported by the evidence. The following cases point out the essential requisites of a joint adventure, and under facts similar to the case at bar indicate the relationship to be a brokerage and not a joint adventure. (N. W. Transfer Co. v. Investment Co. 158 Pac. 281; Floyd v. Kicklighter, 76 S. E. 1011; Hammel v. Feigh, 173 N. W. 570; Griffiths v. Von Herberg, 169 Pac. 587.) There is no unrebuttable presumption of law that joint adventures are to share equally in the profits of their adventure. (Kaufman v. Catson, 94 S. E. 388.) A contract tending to impair the fidelity of the fiduciary is illegal. (Williston on Contracts, Vol. 3 Sec. 1737; Warner v. Flack, (Ill.) 166 N. E. 197; Deboer v. Harnsen, 90 N. W. 1036.)

KIMBALL, J.

James M. Hoge sued Ora Haley for $22,752.50, claimed as one-half the profits of a joint adventure in the purchase and resale of ranch property. A trial by jury resulted in a verdict for plaintiff for $2547. The plaintiff brings error and the defendant cross error. Pending the proceedings in error Ora Haley died, and Robert L. George, administrator

with the will annexed of his estate, was substituted by stipulation as defendant in error.

The plaintiff, the defendant, and one Timothy Ross had had business relations of different kinds with each other for a number of years prior to 1907. In the summer of that year Ross bought of the Riverside Livestock Company all its cattle and sheep on the Riverside Ranch with the use of the ranch until May, 1908, and later, in September, 1907, entered into a contract with said company, the owner of the ranch, for its purchase at the price of $110,000, of which $1000 was paid down, the balance to be paid in installments. In the same contract Ross agreed also to buy the company's horses and hay.

In the summer or fall of the same year Ross sold to Hoge a one-half interest in a part of the sheep, which were thereafter, for several months, owned jointly by Ross and Hoge, under the control of the latter, and kept for a part of the time at least upon the Riverside Ranch.

In November, 1907, Ross went to Pennsylvania, where he was seriously sick for several weeks, and did not return to Wyoming until April, 1908. During his absence from Wyoming, Hoge, in addition to the services which he rendered as manager of the sheep business in which they were jointly interested, and without any legal duty, but as a friend and neighbor, gave aid and advice in the caring for other property belonging to Ross. Hoge learned that a payment of $5000 on the land purchase would beome due January 1, 1908, and that if the payments were not made when due, the rights of Ross under the contract would be forfeited. Realizing that Ross would not be able to make the payment, Hoge went to Haley, explained the situation, and got from him $9500, which was paid to the Riverside Livestock Company in satisfaction of the $5000 due upon the ranch and $4500 on the hay. Shortly afterward Hoge suggested to Haley that he could make some money by taking over the Ross contract, but Haley declined to act on the suggestion.

Following these events the demand in that vicinity for

ranch property increased, and values advanced. Haley sold his own ranch in that county, and Ross, still in Pennsylvania, was negotiating with parties of Waynesburg, in that state, to take over his land purchase contract for a sum that would allow him a profit of $5000 on the transaction. The agents of the Waynesburg parties came to Wyoming, where they examined the lands under the guidance of Mr. Hoge. A few days after they had left Wyoming, Haley, then in Denver, wrote Hoge as follows:

"Laramie, Wyo., March 8, 1908."

"Hon. Jas. M. Hoge,

Laramie.

Dear Sir:

I wish you would wire me c/o the Tremont Hotel, Denver, when Mr. Ross arrives so 1 can arrange to meet him and talk over the disposition of the River Side and if he has not sold to those Waynesburg parties can't we get it and handle it in some way to make some money out of it? If not too late don't let him sell it to those people for a song or a small margin for the way its contracted as I understand it we can have good long time to work on and I think we can make some good easy money to get it. I think I can find buyers soon or we could cut it up.

Yours truly,
Ora Haley."

Hoge did not reply in writing to this letter. His testimony as to his conversation with Haley soon afterwards, was as follows:

"About two days after I received the letter Mr. Haley came to Laramie and telephoned me and I met him at his house and we had a talk. I told Mr. Haley that I had received his letter and I would be glad to join him in the purchase of that option. I thought there was money in it and would be glad to enter into an agreement with him to purchase the option.

Q. Was anything said in that conversation about furnishing the money?

A. Yes. I told Mr. Haley I wouldn't be able to put up the money part of it on the start, that I would have to rely upon him, and he answered back it was all right, that the payments on the Riverside Ranch were so easy that if he was a younger man he would take hold of the thing expecting under a sure belief that he could make the payments out of the profits of the ranch year by year, and that he believed he could put his hand on the man that would give us $5.50 an acre for it.

Q. Did he mention any of the proposed buyers?

A. No, he didn't.

Q. Well, what further conversation occurred, if any?

A. Then we talked on and he expressed a fear that if Mr. Ross came to Laramie and got onto the feeling regarding real estate, he would be harder to trade with, so we arranged that I should work on the outside and secure it and turn it over to him.

Q. Was any particular plan made about meeting Mr. Ross?

A. Yes, we agreed to meet Mr. Ross in Denver on his way out and trade with him before he got to the Laramie plains.

Q. At whose suggestion was that?

A. Mr. Haley's.''

At this time Hoge and Haley did not know whether or not Ross had sold to the Waynesburg parties, and after the conversation, Hoge telegraphed Ross requesting him, if not already bound, to wait. It was then decided that Haley would offer Ross $10,000 profit for his rights under the contract. This offer was communicated by Hoge to Ross by wire, and accepted in like manner by the latter. The telegrams, thus exchanged, were not in evidence, and it appears that the parties did not understand that they constituted a binding contract. Hoge then arranged with Ross for a meeting in Denver to close the transaction. The meeting, as so arranged, was had, and Hoge testified that he there said to Ross: ''If you feel under any obligation to me, you will repay me by turning the property over to Mr. Haley,'' and on

being asked by Ross what he was to be charged for Hoge's services to him, replied: "I have no right to charge you anything because I have been working against you." Afterwards, at the same meeting in Denver, Ross and Haley agreed upon the terms of the transfer, in accordance with the previous offer by wire, but the contract was not signed until a day or two later (April 10), at Laramie.

The result of the transfer was that Haley was substituted for Ross as purchaser in the contract to buy the Riverside Ranch for the sum of $110,000, which, with the $10,000 profit paid to Ross, made the total cost of the ranch to Haley $120,000. Hoge advanced no part of the money required to meet the terms of the contract with Ross and was not a party to any of the instruments concerning the future payments under the contract of purchase to which Haley thus became a party.

After he had succeeded to the rights of Ross, Haley took possession of the ranch which he used for his personal advantage until possession was delivered to the next purchaser, without any recognition of any right of Hoge to participate in the benefits of such use. However, Hoge was largely instrumental in finding the purchaser to whom sale was made for the sum of $165,000 in the latter part of July, less than four months after the rights of Ross had been transferred to Haley. Thus, without considering small items, the profit to Haley was $45,000, of which Hoge sought by this suit to recover one-half.

We shall first consider the questions raised by the defendant's cross petition in error.

. It is contended that the trial court erred in refusing to direct a verdict in defendant's favor, for the reason that the evidence was insufficient to establish a contract of joint adventure between the plaintiff and defendant. The relation of joint adventurers is controlled largely by the principles of the law of partnership, yet a joint adventure and partnership are not identical. Some of the distinctions between the two are noticed in the following cases: (Reece v.

Rhoades, 25 Wyo. 91, 165 Pac. 449; Jackson v. Hooper, 76 N. J. Eq. 185; Nelson v. Lindsay, 179 Ia. 862, 162 N. W. 3; Keyes v. Nims (Calif.) 184 Pac. 695; Donohue v. Haskamp (Wash.) 187 Pac. 346; Harvey v. Sellers, 115 Fed. 757; Sanders v. Newman, (Wis.) 181 N. W. 822.) A joint adventure has been defined as an enterprise undertaken by several persons jointly. (23 Cyc. 452.) Other definitions, similar in meaning and alike in their simplicity, may be found in National Surety Co. v. Winslow, (Minn.) 173 N. W. 181; Fletcher v. Fletcher, (Mich.) 172 N. W. 436, 440; McRee v. Quitman Oil Co., 16 Ga. App. 12, 84 S. E. 487. Where the existence of the relationship is in issue, and there is substantial evidence tending to prove that the parties intended to join their efforts in furtherance of the enterprise for their joint profit, the question is pre-eminently one for a jury. (Van Tine v. Hilands, 131 Fed. 124; Brady v. Colhoun, 1 Penr. & W. 140.)

We have stated the evidence sufficiently, we think, to show that there was substantial ground for a finding that the parties to this action intended to and did join their efforts in the venture of buying and reselling the Riverside Ranch, and that they were to share the profits. To justify such a finding it was not necessary that the rights and duties of the parties to the contract of joint adventure should have been more particularly specified or defined. In Goss v. Lanin, 170 Ia. 57, 152 N. W. 43, cited by this court in Reece v. Rhoades, *supra,* it was said:

"It is true that it is not necessary that there should be a specific formal agreement to enter into a joint enterprise, or that the interests of the parties should be definitely settled in such agreement, or that there should be a formal agreement as to sharing in the profits. If there be a joint enterprise proven, either by direct evidence of a mutual agreement to that end or by proof of facts and circumstances from which it is made to appear that such enterprise was in fact entered into, the law fixes their rights."

Viewed in the light of this statement of the law of joint

adventure, we do not think the contract relied upon by plaintiff was too indefinite to be enforced. The consideration for such a contract may be, as in partnership contracts, the promise, express or implied, to contribute capital or labor to the enterprise. (Botsford v. Van. Riper, 33 Nev. 156, 110 Pac. 705.) It is not difficult to find evidence of such a promise by the plaintiff in this case, and it is not disputed that he did in fact contribute his services both in the acquisition of the property which was the subject of the venture and in procuring the purchaser to whom the profitable sale was made. The absence of any agreement in regard to the proportions in which the profits should be shared is supplied by a presumption to which we shall presently refer. If the contract be criticized because it does not appear that the plaintiff assumed any liability for losses, the answer is that an agreement would be implied if there had been losses that they should be shared in the same proportion as the profits. (Van Tine v. Hilands, *supra*; note to Botherton v. Gilchrist, 115 Am. St. Rep. 433; Johnson v. Carter, 120 Iowa, 355, 94 N. W. 407; 1 Lindley, Part. 12.)

It is urged that the contract here must be construed to be nothing more than one of brokerage. While the cases cited on this point are authority upon the proposition that a contract of brokerage, rather than of partnership, may be the result of a transaction whereby one person is to be paid for his services out of the profits, nothing is said in them which persuades us that, under the evidence in the case at bar, the question was not a proper one for submission to the jury to decide the fact as to whether the parties intended a joint venture.

We have not set forth all the evidentiary facts from which it is argued by counsel that the relation of joint adventures was not intended by the parties, such as the fact that the plaintiff did not assert any right to the land between the time of purchase and of re-sale, and that, when demanding a settlement, the language which he used was more consistent with a claim for services rendered than with that of a

partner or one having a joint interest. These matters were properly before the jury with whom no doubt they had their weight, but we cannot say that they should necessarily have controlled the verdict. It is admitted that none of the words "partners," "partnership," or "Joint adventurers" was employed by the parties, but if the jury believed that defendant, a few days after writing the letter of March 8, agreed to plaintiff's proposal "to join him in the purchase of that option", the intention of the parties was as clear to them, no doubt, as if some word with technical legal meaning had been used to define the relationship.

Some of the cases applying the principles of joint adventure to contracts similar to the one under consideration, are: Flower v. Barnekoff, 20 Or. 132, 25 Pac. 370, 11 L. R. A. 149; Tyler v. Waddingham, 58 Conn. 375, 20 Atl. 335, 8 L. R. A. 657; Kayser v. Mongham, 8 Colo. 232, 6 Pac. 803; Koyer v. Willmon, 150 Cal. 785, 90 Pac. 135; Simpson v. Tenney, 41 Kans. 561, 21 Pac. 634; Smith v. Imhoff, 89 Wash. 418, 154 Pac. 793; Hines v. Jonston, 95 Ga. 629, 23 S. E. 470, Frazer v. Linton, 183 Pa. St. 186, 38 Atl. 589. It has often been held that persons who simply buy land to sell again for their mutual profits are not technically partners, but this, as we have already seen, is not exactly the question. There may be no technical partnership, but the rights and obligations are akin to those of partners. (Irvine v. Campbell, 121 Minn. 192, 141 N. W. 108, Ann. Cas. 1914 C, 689; Jones v. Patrick, 140 Fed. 403, Butler v. Trust Co. (Calif.) 172 Pac. 601.) Compare the cases of Norton v. Brink, 75 Nebr. 575, 110 N. W. 669 and Kohl v. Munson, 97 Nebr. 170, 149 N. W. 314, in neither of which was a partnership proved. In the former the plaintiff had contributed neither money nor services to the enterprise, and a recovery was denied; in the latter the plaintiff had contributed something to the venture, and a recovery was allowed.

The next contention in support of the cross-petition in error is that the contract was void under the statute of frauds (§ 4719, Wyo. C. S. 1920) which reads as follows:

"In the following cases every agreement shall be void unless such agreement, or some note or memorandum thereof, be in writing, and subscribed by the party to be charged therewith:

\*     \*     \*     \*     \*     \*     \*     \*

Fifth—Every agreement or contract for the sale of real estate, or the lease thereof, for more than one year."

In Dale v. Hamilton, 5 Hare, 369, though Vice-Chancellor Wigram, who decided the case, thought it worked a virtual repeal of the statute of frauds, it was held that a partnership agreement to be jointly interested in a speculation in land could be proved by parol, and such an agreement being proved, one of the parties to it could establish his interest in land, the subject of the partnership, without any written evidence. The decision of this point, as shown in the same case on appeal (2 Phil. 266), was not necessary under the facts; it was not noticed in the opinion, though cited in the argument, in the later case of Caddick v. Skidmore, 2 De G. & J. 52, where a different conclusion was reached, and it is said by Lindley in his work on Partnership (p. 82) to be a decision difficult to reconcile with sound principle. It was contrary to an earlier decision by Judge Story in Smith v. Burnham, 3 Sumn. 435; and in the later cases in this country we find a distinct conflict of the authorities, with Dale v. Hamilton and Smith v. Burnham, the leading cases upon the opposite sides. If our statute of frauds were as comprehensive as the English statute 29 Car. II, c. 3, and we were then to consider a case where the plaintiff, relying upon an oral contract of joint adventure, sought to recover an interest in the land which was the subject of the enterprise, the task of discerning, upon view of the conflicting authorities, the true principle, would be more difficult than we conceive it to be under our statute in the case at hand.

The statutes of frauds of this state, so far as it is here drawn in question, refers only to contracts "for the sale of real estate," omitting the words "or any interest in or

concerning the same," found in the corresponding provision of section 4 of the English statute. Giving to the word "sale" as used in the statute, the broadest meaning that reason will permit, it would be a most strained construction to say that the plaintiff here is seeking to recover upon a contract for the sale of real estate.

As was said by Judge Earl in Chester v. Dickerson, 54 N. Y. 1:

"Most of the conflict in the authorities has arisen in controversies about the title to the real estate after the dissolution of the partnership or the death of one of the partners. But suppose two persons, by parol agreement, enter into a partnership to speculate in lands, how do they come in conflict with the statute of frauds? No estate or interest in land has been granted, assigned or declared. When the agreement is made no lands are owned by the firm, and neither party attempts to convey or assign any to the other. The contract is a valid one, and in pursuance of this agreement they go on and buy, improve and sell lands. While they are doing this, do they not act as partners and bear a partnership relation to each other? Within the meaning of the statute in such case neither conveys or assigns any land to the other, and hence there is no conflict with the statute. The statute is not so broad as to prevent proof by parol of an interest in lands; it is simply aimed at the creation on conveyance of an estate in lands without a writing. * * * This is not a controversy about the title to any of the lands taken or owned by the partners, but it simply relates to the conduct of the defendants while they were acting as partners; and in such a case the statute of frauds certainly can present no obstacle to relief."

This language may have been *dicta* in the case from which it is taken, but it has had the influence of authority as shown by the decisions where it is cited or quoted with approval. (Holmes v. McCray, 51 Ind. 358; McElroy v. Swope, 47 Fed. 380; Garth v. Davis, 27 Ky. Law. Rep. 505; Newell v. Cochran, 41 Minn. 374, 43 N. W. 84; Hirbour v. Reeding, 3

Mont. 15, Babcock v. Read, 99 N. Y. 609; Case v. Segar, 4 Wash, 492; Richards v. Grinnell, 63 Ia. 44, 50 Am. Rep. 727, 18 N. W. 668; Kilbourn v. Latta, 5 Mack 304, 60 Am. Rep. 373; Thompson v. McKee (Okla.) 142 Pac. 755, L. R. A. 1915 A, 521; Bates v. Babcock, 95 Cal. 484, 30 Pac. 605, 16 L. R. A. 745; Speyer v. Desjardins, 144 Ill. 641; Flower v. Barnekoff, *supra.*)

These are a few of the many cases where it has been held that contracts similar to the one relied upon by the plaintiff in this case, being neither contracts to buy or sell real estate as between the parties, are not within the statute of frauds. Some of these cases do not, we think, meet the reasoning of Judge Story in Smith v. Burnham, *supra,* for he did not hold that the partnership contract which he was considering was one for the sale of land, or for the sale of an interest in or concerning lands, but that it was a declaration or certain of a trust or confidence in lands, not arising or resulting by implication of law, and as such, required to be in writing by the provisions of a statute similar to section 7 of the English statute. The decision in Shulz v. Waldons, 60 N. J. Eq. 71, 47 Atl. 187, was upon like grounds. We have in this state no such statute, and no point is made that the contract in this case is void or unenforceable as an attempt to declare or create a trust without a writing. Without pursuing further the subject of oral trusts, we suggest in passing that under the present laws it is probable that trusts in lands may be declared or created in this state as at common law. (Peebles v. Reading, 8 Serg. & R. 484; Murphy v. Hubert, 7 Pa. St. 420; Gardner v. Randell, 70 Tex. 453, 7 S. W. 781.)

A different question would be presented if the plaintiff were seeking to recover an interest in the lands which had been acquired in the course of the joint enterprise instead of his share of profits which have arisen from the sale of them. Even though the contract be one which is in contravention of the statute, yet, when the transactions affecting the interests in the land have been completed, so that the

court need not enforce anything with reference to the land itself, it has been held that the rights of the parties resulting from their dealings may be enforced. (Smith v. Putnam, 107 Wis. 155, 82 N. W. 1077), and cases cited. See Jones v. Patrick, *supra,* and Zwicker v. Gardner, 213 Mass. 95, 99 N. E. 949, 42 L. R. A. (N. S.) 1160; Coward v. Clanton, 79 Calif. 23, 21 Pac. 359.

We therefore hold that when profits have accrued from the purchase and re-sale of real estate in pursuance of an oral contract of joint adventure, the statute of frauds of this state will not affect the right of one of the parties to the contract to recover his share of such profits, even though all the money were furnished by the other party who took and transferred in his name alone the title to the land.

The next questions for consideration center around the proposition stated in an instruction in which we have numbered the three principal sets of facts mentioned and quote:

"You are instructed that if you shall find from the evidence (1) that there was an agreement between the parties whereby the plaintiff was to have some share in the land or in the profits from the sale thereof, and (2) that the only consideration or a substantial part of the consideration on the part of the plaintiff for such contract was his agreement to induce Ross to sell his option, and to withhold from Ross the information and the opportunity to secure information that a change in conditions had made his option valuable, and you shall further find (3) that at that time the plaintiff occupied a confidential relation of trust with Ross with respect to this land, and was under a duty to disclose to Ross all material facts with respect to land and the market therefor, such consideration was immoral and could not constitute a valid consideration for such contract, and such contract was unenforceable."

We believe the principle of law is stated correctly. It is the familiar doctrine of constructive trusts that there is a presumption of fraud in every case where a fiduciary

profits by a transaction with the person who confides in him. To overcome the presumption it must be shown that he who seeks to uphold the contract communicated to the other, not only the fact of his interest in the transaction, but all information he had which it was important for the other to know in order to enable him to judge of the value of his property. (Tate v. Williamson, L. R. 1 Eq. 528, S. C. L. R. 2 Ch. 55; 2 Pomeroy Eq. § 956; 3 Williston on Contracts, § 1499.) A contract is illegal if its object or tendency is to cause unfaithful conduct by a fiduciary. (3 Williston on Contracts, § 1737; 13 C. J. 415; Ridgely v. Keene, 119 N. Y. Supp. 451; Skirvin v. Gardner, 36 Okla. 613, 129 Pac. 729; Fuller v. Dame, 18 Pick. 472, 481; Bollman v. Loomis, 41 Conn. 581; Thomas v. Caulkett, 57 Mich. 392, 24 N. W. 154; Simon v. Garlitz, (Tex. Civ. App.) 133 S. W. 461.) If the facts stated in the instruction were established, the contract in question had the object or tendency which the law forbids, and was illegal. The defendant claims that said facts were established so conclusively by the plaintiff's own testimony, and by other evidence which was undisputed by him, that the trial court should have directed a verdict for defendant upon this ground, as was requested by appropriate motions at the trial. The failure so to direct a verdict is the third and last claim of error raised by the cross-petition in error.

The facts which we have numbered (1) in the instruction, are, of course, advanced by the plaintiff as the basis of his right to recover. Those numbered (2) are, in our opinion, established by plaintiff's own testimony, from which it appears that he and the defendant knew of a change in conditions on the Laramie Plains, where the land was situated, which increased the value of the Ross contract; that Ross did not know of those conditions; that it was understood that plaintiff and defendant should conceal them from Ross, and that they were so concealed. It does not appear clearly what those conditions were, but it is quite evident that the information to be withheld was not a mere

opinion as to value, but a state of facts which would come to the knowledge of Ross if he should visit the Laramie Plains. In regard to the facts in group (3), we are of a different opinion, and cannot agree that a fiduciary relation between Hoge and Ross with reference to the land contract was conclusively established by the evidence.

It is undisputed that Ross and Hoge were close friends, and there was between them no doubt the trust and confidence which is the essence of such friendship. But that fiduciary relationship which is the foundation of the rule which we are now considering must be one from which the law infers or presumes the exercise of undue influence. In cases of trustee and beneficiary, principal and agent, and the like, the relations are essentially fiduciary, and the inference or presumption follows of course. This is not such a case, as it is conceded that Hoge was not the agent of Ross with reference to the ranch property in question. However, the application of the rule is not confined to those definite instances, but is invoked in a variety of less definite confidential and trust relations. (2 Pomeroy Equity, § 956.) For establishing the fiduciary relationship in the latter class of cases there seems to be no fixed test, but it must appear, as a fact, that there was confidence reposed on the one side and accepted on the other with a resulting dependence by the one party and influence by the other. (Cowee v. Cornell, 75 N. Y. 91, 99; McKnatt v. McKnatt, (Del.) 93 Atl. 367; Beach v. Wilton, 244 Ill. 413, 91 N. E. 492.) The fact that such relation existed must be established by evidence, and the burden is upon the party asserting it. (Shevlin v. Shevlin, 96 Minn. 398, 105 N. W. 257.)

Counsel call especial attention to that portion of section 1737 of Williston on Contracts where it is stated that "probably any contract for reward to influence by apparently disinterested advice the conduct of a third person is similarly obnoxious to public policy, even when neither party at the time bears a fiduciary relation to the person to be influenced." The authorities cited in support of this, and of the

similar statement in 2 Page on Contracts (2nd Ed.), Section 881, are, as indicated by the text, cases where the party to be influenced was not informed of the interest in the transaction of the party who undertook to exercise the influence. In this case Hoge testified that he did make to Ross statements which were sufficient to impart notice of his interest.

We cannot agree that it was established by undisputed evidence that a fiduciary relation, as contemplated by the law on this subject, existed between Hoge and Ross with reference to the ranch property in question.

On the other hand, we are of opinion that there was evidence from which the jury might have found such a relation, and, therefore, the question was properly submitted to them. If the fiduciary relation had been found to exist, the case presented no question of overcoming the presumption of fraud, because, as we have shown, the undisputed evidence negatived the possibility of the full disclosure necessary for that purpose; and, obviously, in the face of that evidence, it could not be classed among those cases, cited in support of an exception to the rule (31 Cyc. 1449), holding that a fiduciary may profit by a transaction in which he acted merely to bring the parties together.

The plaintiff in error complains of this instruction because the issue of illegality of the contract was not made by the pleadings. It is true that this defense was not plead by defendant, but the contract was wholly denied by his answer, and when, in such a case, evidence appears which tends to show that the contract relied upon is contrary to public policy, it is the duty of the court to determine its character. (Kennedy v. Lonabaugh, 19 Wyo. 352, 117 Pac. 1079.)

It is further contended that, if it be conceded that the contract of joint adventure in question was contrary to public policy, yet, the illegal transaction being completed, there is no reason why the defendant should be permitted to retain all the proceeds. This contention, we think, is also settled against the plaintiff by Kennedy v. Lonabaugh,

*supra,* which was a suit for an accounting and division of
profits under a partnership contract, where it was held that,
as the contract was illegal, no relief could be granted. It is
argued that that case should be distinguished because there
the partnership business was contrary to a Federal statute;
but we are cited to no authority which would justify the dis-
tinction, and are of opinion that, if the contract in the case
at bar were illegal because of a vicious tendency, the reason
for denying a recovery would apply with the same force as
in a case where the transaction was prohibited by the writ-
ten law. It is true that Kennedy v. Lonabaugh was an
equity case, and the rule, as there announced, was stated as
doctrine of courts of equity. It is suggested that it should
not be invoked in an action at law. We find no authority
for any such limitation of the rule. See: 13 C. J. 492; 1
Lindley on Partnership, 105. The ancient maxims express-
ing it are maxims of the common law of contracts. (McMul-
len v. Hoffman, 174 U. S. 639, 654; Broom's Legal Maxims,
(7th Eng. Ed.) 554-563.) It would be singular indeed if re-
lief might be denied to a partner seeking an accounting in
equity, and granted to him, if no accounting were necessary,
when he sues at law for a balance due.

The plaintiff contends that there was error in giving the
following instructions:

"Testimony in regard to verbal statements should be re-
ceived with great caution; the evidence, consisting as it does
in mere repitition of oral statements, is subject to much im-
perfection and mistake, in consequence of the person speak-
ing not having clearly expressed his own meaning, or in
consequence of the witness having misunderstood him. It
frequently happens also that the witness, by unintention-
ally altering a few of the expressions actually used, gives
an effect to the statement completely at variance with what
the party did in fact say. This kind of testimony should
be scanned closely, particularly when a long time has elapsed
since the conversation. Where statements are deliberately
made and precisely identified, or where the precise words

are shown, or proved, by intelligent and reliable witnesses, they often lead to a satisfactory conclusion. When a witness can only give what he thinks is the substance of what was said, the weight to be given to such testimony depends largely upon the strength of memory, intelligence and integrity of the witness.''

It is conceded by counsel that the only evidence to which the instruction was applicable was that of Hoge as to the terms of the contract between himself and Haley, and, inasmuch as the jury found that there was a contract, it is suggested that the instruction, even if erroneous, worked no prejudice; but we pass that suggestion without discussion, as it is necessary that we rule upon the propriety of the instruction for guidance in further proceedings in the case.

If we assume, as we do, that the instruction could have been applied only to the testimony of plaintiff as to the conversation which he claimed the contract was made, we find no authority for it. The first two sentences of the instruction employ the language of § 200 of Greenleaf on Evidence, but so changed that the instruction applies to all "verbal statements," whereas Greenleaf's text had reference to "verbal admissions" only. In other texts, where we find discussions of the propriety of similar instructions, it is apparently assumed that, when given, they should apply only to such admissions. (38 Cyc. 1742; 2 Thompson, Trials, § 2431.) The word "admissions," as here used, may be defined as concessions or acknowledgments made by a a party of the existence or truth of certain facts. (Bouv. Law. Dict.) They are those statements which would otherwise be hearsay. (Castner v. Railway Co., 126 Ia. 581, 102 N. W. 499.) The promise upon which the suit is based is not an admission in this sense, but is the fact to be proved like any other issuable fact. (Thomas v. Paul, 87 Wis. 607, 58 N. W. 1031; Thompson v. Purdy, 45 Or. 197, 77 Pac. 113.) Statements in the nature of admissions which are also admissable in evidence as part of the *res gestae* may not

be disparaged by such an instruction. (Dixon v. Russell, 156 Wis. 161, 145 N. W. 761; John v. Pierce (Wis.) 178 N. W. 161.) The cases which we have cited are from those states where such cautionary instructions have been approved when limited to testimony of verbal admissions, and, still confining the citations to cases from such states, we note the following authorities which illustrate further the limitation stated. (Raleigh etc. R. R. Co. v. Allen, 106 Ga. 572, 32 S. E. 622; Gleason v. Denson, 65 Or. 199, 132 Pac. 530; Martin v. Algone, 40 Ia. 392; State v. Jackson, 103 Ia. 702, 73 N. W. 467; Blume v. Chicago etc. Ry. Co., 133 Minn. 348, 158 N. W. 418; Haven v. Cole, 67 Wis. 493, 30 N. W. 720; Christensen v. Harms, 38 So. Dak. 360, 161 N. W. 343.) In Georgia a statute provides that "all admissions shall be scanned with care," (Parks Ann. Code, § 5784), and in Oregon that "oral admissions ought to be viewed with caution" (L. O. L. § 868).

Thus, the cases from those states where a similar instruction is upheld when applicable only to oral admissions, either directly or inferentially support the view that it should never be made applicable to testimony of the oral contract upon which the suit is based. Hence, we hold that the instruction should not have been given. Whether such an instruction should be given in any case is a point upon which the authorities are divided, and which we cannot decide in this case, as it is not presented by the record.

To guide the jury in determining the interests of the parties in the profits of the venture, the plaintiff requested the following instruction:

"When two persons undertake a joint enterprise for mutual profit, it is to be presumed that their interests in the profits are equal unless there is evidence from which an understanding for a different division may be implied. Inequality of interest does not necessarily result from unequal contributions, or from the fact that one of the parties contributes all of the money while the other contributes only service."

That instruction was refused, and the one upon that subject, given at the request of defendant, was as follows:

"You are instructed that if you find that the parties entered into any agreement of partnership or joint adventure relative to the Riverside Ranch, you must find and determine the relative interests of the parties in that transaction. These relative interests are not fixed by law, but wholly by the agreement of the parties themselves. If there is an express agreement fixing the relative rights and interests of the parties, that express agreement must prevail. If there is no express agreement upon this point it is ordinarily presumed that the parties are to share equally, but it sometimes is to be inferred that the parties are to share in proportion to their respective contributions to the enterprise. These presumptions are not presumptions of law, but are presumptions of fact, and the jury must determine whether there was any *express* agreement between the parties as to their respective shares in the land or in the profits thereof, and if there was no such express agreement it is the duty of the jury to determine from all of the words and acts of the parties at the time the agreement was made, and the conditions surrounding the same, what the respective interests of the parties were to be."

The plaintiff contends that this latter instruction was misleading to the jury and prejudicial to his rights, and also, that the verdict by which he was awarded less than one-tenth of the amount he claimed, was not supported by the evidence. These two contentions are somewhat interwoven and may be discussed together.

We think it is well settled that partners shall share equally in profits, unless there be an express or implied contract for a different division. (Story on Part., § 24; Parsons on Part., § 258; 1 Lindley on Part. 348-351; 3 Kents Commentaries, 28, 29; 30 Cyc. 451, 693, 696; 22 Am. & Eng. Ency. Law., 101-2; Gould v. Gould, 6 Wend. 263; Paul v. Cullum, 132 U. S. 539; Turnipseed v. Goodwin, 9 Ala. 372; Griggs v. Clark, 23 Cal. 427; Roach v. Perry, 16 Ill. 37; Moore v.

Bare, 11 Ia. 198; Johnson v. Jackson, 130 Ky. 751, 114 S.. W. 260; Ratzer v. Ratzer, 28 N. J. Eq. 136; Ryder v. Gilbert, 16 Hun. 163; Taylor v. Taylor, 2 Murph. 70; Broadfoot v. Fraser, 73 Vt. 313, 50 Atl. 1054.) This presumption of equality of interest applies to a joint adventure, or partnership in a single transaction. (23 Cyc. 459; Frazer v.. Linton, 183 Pa. St. 186, 38 Atl. 589; Rankin v. Black, 38 Tenn..650; Wetmore v. Crouch, 150 Mo. 671, 51 S. W. 738; Lind v. Webber, 36 Nev. 623, 134 Pac. 641, Ann. Cas. 1916. A, 1202; Gius v. Coffinberry, 39 Ore. 414, 65 Pac. 358.) A different view upon this subject was announced in Thompson v. Williamson, 7 Bligh N. S. 432, a decision under Scotch law, where it was stated that there was no presumption of law that partnership shares were to equal; that the presumption was only one of fact which the jury might or might not follow, and that, even though there was no evidence of a contract for unequal shares, the jury should be permitted, upon consideration of all the facts and circumstances, to decide what the interests of the parties should be.. The decision in that case was contrary to the opinion of Lord Eldon expressed in the earlier case of Peacock v. Peacock, 16 Ves. 49, 19 Eng. Rul. Cas. 549, and has not been followed in the later English cases. See 1 Lindley on Part., 348-350, and cases cited.

Thompson v. Williamson has never been followed by the courts of this country, and we find it approved only in a separate opinion by Hoffman, J., in Hasbrouck v. Childs, 3 Bosw. 105. Its reasoning did not meet the approval of Judge Story, whose discussion of this subject in his work on Partnership, § 24, and note, is the most thorough that we have seen. We are convinced by it, and the other authorities which we have cited, that the presumption of equality is a true presumption, of which there is in reality only one kind, properly referred to either as a "presumption" or "presumption of law." The effect of the particular presumption, in a case of this kind, is to invoke the rule of law requiring the jury to reach the conclusion to which it points,.

that is, equality of interest, in the absence of evidence to the contrary, that is, in the absence of evidence from which an agreement for an unequal interest may be implied.

This principle is stated with precision in the first sentence of the instruction requested by plaintiff. The second sentence is a statement similar in substance to the language used frequently by text writers and judges when explaining this rule, and we believe it was a proper statement to go to the jury in this case as a warning against the danger of undertaking to compare and weigh the value of the respective contributions to the enterprise. See 1 Lindley on Part., 349; Bates on Part., § 181; Johnson v. Jackson, *supra;* Rankin v. Black, 38 Miss. 655; Broadfoot v. Fraser, 73 Vt. 313, 50 Atl. 1054; Miller v. Hale, 70 S. W. 258. We are of opinion, therefore, that plaintiff's instruction stated the law correctly.

Counsel for plaintiff now contends that the case did not turn upon any question of the relative interests of the parties to the venture, but upon the question whether plaintiff had any interest at all, and that there was no evidence whatever to overcome the presumption of equality. However, at the trial, the plaintiff did not ask the court to instruct upon that theory, but, by requesting the instruction which we have quoted, consented that the jury should decide whether or not there was any evidence of an implied agreemen for unequal interests, and consequently, if the instruction given upon that subject was the same in meaning as the instruction which he requested, the error, if any, in submitting that issue to the jury was invited. That such was the case is earnestly urged by counsel for defendant who argue that the instruction given is nothing more than an affirmative converse of the negative statements contained in the instruction asked by plaintiff. We are of opinion, however, that the instructions are dissimilar, and that the one given utterly fails to inform the jury of the true effect of the presumption in question.

In considering this point it should be borne in mind that

there was no evidence whatever of an express contract as to the division of the profits; that the plaintiff claimed an equal share by virtue of the presumption, and though he proceeded at the trial upon the theory that the jury might be permitted to decide whether there was any evidence to overcome it, he was at liberty to argue to the jury that there was not, and to insist that the presumption should control the verdict.

Passing then to the examination of the instruction which was given by the court we find that the jury were told that in the absence of an express agreement upon this point it is "ordinarily" presumed that the parties are to share equally. What, then, are those cases in which equality is not presumed? Looking for the answer to this inquiry, the jury are confronted by the statement that "it sometimes is to be inferred that the parties are to share in proportion to their respective contributions." Nowhere are they told that the presumption of equality should control unless there be evidence from which to imply or infer an agreement for unequal shares, and, left without this guide, may very naturally have understood that equality should not be presumed in any case where the contributions appeared to them to be unequal.

The presumption of equality and the inference of inequality are then positively classified as presumptions of fact. The phrase, "presumptions of fact," is of frequent occurrence in the books, but it is now well understood that, accurately speaking, there is no such thing as a "presumption" of fact (4 Wigmore Ev. § 2491), and the term should be discarded as useless and confusing. When used it can mean only inference of fact, or mere arguments which may or may not be acted upon by the jury, who, under our system of jury trials, need not usually be instructed in regard thereto. This classification of the presumption of equality as a "presumption of fact," if understood by the jury, eliminated from the case all question of any true presumption or presumption of law.

The instruction then informs the jury that it is their duty "to determine * * * what the respective interests of the parties were to be." This closing language, considered in connection with the rest of the instruction, may have been taken by the jury as an invitation to measure the interests by the value of the contributions, which could only lead to that vague speculation which it is the object of the presumption to eliminate from a case of this kind. If they accepted it as a direction only to determine what the contract of the parties was, the instruction is then deficient in that it fails to state what, if anything, should control the verdict in the absence of any evidence from which a contract could be implied. In effect, they were required to follow the rule announced in Thompson v. Williamson, *supra*, which, as we have seen, is at variance with the other cases both in England and this country. The cases In Re M'Connell, 197 Fed. 438 and Fleischmann v. Gottschalk, 70 Md. 523, 17 Atl. 384, cited by defendant as precedents upholding an unequal division of profits, are entirely consistent with our view of the law. In the former case, one of the parties to the venture was held to be entitled to a return of his capital, which was used in the venture, with interest, and the net profits were then divided equally. In the Fleischmann case it was held that the evidence warranted the inference that the parties had agreed to an unequal division, and the decree, carrying out that agreement, was approved.

In the case at bar, the verdict, which is satisfactory to neither party, might not have been reached if the jury had been instructed as requested by plaintiff upon this subject.

It is claimed that the error in this instruction was emphasized by other instructions from which the jury may have inferred that the plaintiff, to entitle him to recovery, was required to prove an express contract for an equal share of the profits. We do not deem it necessary to analyze the language which is the subject of this complaint, nor to discuss its probable effect, as our views upon the presumption

involved will no doubt be sufficient guide in instructing upon this subject at another trial.

Because of the error mentioned the judgment must be reversed and the case remanded for a new trial. It is so ordered.

*Reversed and Remanded.*

POTTER, C. J., and BLUME, J.. concur.